## C. H. TOLLETT V. THE STATE.

No. 18989.   Delivered May 5, 1937.

The opinion states the case.

*Z. D. Allen* and *Earle Kuntz,* both of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary; punishment, two years in the penitentiary.

The bills of exceptions appearing in this record were filed more than thirty days after the expiration of the trial term of the court below. No order is found granting appellant more than the statutory thirty days in which to file such bills of exceptions. They can not, therefore, be considered by us.

The facts are unusual. Carter lived in the town of Holliday, Texas. He had a stock farm seven miles out. He went to said farm on the morning of August 5, 1936, and found the door of his granary open and that some wheat had been taken. No attempt was made to estimate the amount of wheat lost. Carter closed the door of the granary. Later in the same day he came back, and, according to his testimony, found that the door "had been tampered with again." He testified three

times that the door had been tampered with, but nowhere stated that it had been opened, nor does he claim or disclose facts from which it would appear that anything had been taken from the granary after he was at same on that morning and closed the door which he found open.

In his charge to the jury the trial court specifically confined their right, to find appellant guilty of burglary, to the question as to whether they believed from the evidence beyond a reasonable doubt that said granary had been opened again after the first visit of Mr. Carter to same on the morning of August 5th. No witness testified that the granary had been entered after Carter's first visit, and no property, claimed to have been in the granary at the time of Carter's first visit, was ever found in the possession of appellant thereafter.

There is quite a deal of testimony in the record supporting the proposition that two other men,—Haskew and Richeson,—sold a load of wheat answering many descriptives of the wheat had by Carter in his granary. This wheat was sold on the 28th of July, before the alleged burglary. It was in evidence that after said wheat was bought by a Mr. Kelly, appellant came to Kelly and claimed that the wheat was his and had been stolen from him by Haskew and Richeson. Appellant demanded that Kelly pay him for the wheat. Kelly had succeeded in stopping the check given by him to Haskew, and told appellant that he would pay him for the wheat if he could satisfy him that it was the property of appellant. Later, according to Kelly's testimony, appellant appeared at Kelly's office with a little bucket of wheat, which Kelly testified looked to him like the same wheat as that he had bought from Haskew and Richeson as it had in it broken cotton stalks and nettle balls as did the wheat bought by him from the two men mentioned. Kelly testified that he gave appellant a check in payment for said wheat.

There is no brief on file in this case for the State, but our conclusion is that the State's theory in the case is that the little bucket of wheat brought by appellant to Kelly,—in order that a comparison might be instituted between the wheat in the bucket and the wheat bought by Kelly from Haskew and Richeson,—was taken from the granary by appellant after the door of the granary was closed by Carter on the morning of August 5th. A witness testified that during the day of August 5th he saw appellant, Haskew and Richeson go to Carter's place and to the barn, but this witness did not claim

to have seen them enter the granary, or in possession of any bucket or container of any kind. The sheriff testified that he found a bucket of wheat at appellant's place on the 8th of August which compared with the wheat bought by Kelly from Haskew and Richeson.

These are substantially the facts, and we are not able to bring ourselves to believe that they demonstrate sufficiently that the door of Carter's granary was opened by anyone after the time he closed it on the morning of August 5th. If Carter himself could not testify that the door had been opened and the granary entered and property taken therefrom, it would appear hardly proper for the jury to supply by their findings such necessary facts. All Mr. Carter would say about the door of the granary was that it had been tampered with. This does not necessarily mean that it had been opened, and in order to make out a case of burglary it would be necessary for the jury to find beyond a reasonable doubt that the granary had been entered after Mr. Carter left it on the morning of August 5th. It may be that this appellant is guilty, and it may be that upon another trial his guilt might be shown, but we have been unable to bring ourselves to believe that the facts set out in this record exclude every other reasonable hypothesis except that appellant broke and entered said granary.

For the reasons mentioned the judgment is reversed and the cause is remanded.

*Reversed and remanded.*